1  TUCKER ELLIS LLP
   David J. Steele - SBN 209797
2  david.steele@tuckerellis.com
   Howard A. Kroll - SBN 100981
3  howard.kroll@tuckerellis.com
   Steven E. Lauridsen - SBN 246364
4  steven.lauridsen@tuckerellis.com
   515 South Flower Street
5  Forty-Second Floor
   Los Angeles, CA 90071
6  Telephone:      213.430.3400
   Facsimile:       213.430.3409
7
   Attorneys for Plaintiffs,
8  Facebook, Inc. and Instagram, LLC

9              UNITED STATES DISTRICT COURT
              NORTHERN DISTRICT OF CALIFORNIA
10

11  FACEBOOK, INC., a Delaware corporation and       Case No. 19-1167
    INSTAGRAM, LLC, a Delaware limited liability
12  company,                                          **COMPLAINT FOR TRADEMARK AND
                                                      SERVICE MARK INFRINGEMENT; FALSE
13                          Plaintiffs,               DESIGNATION OF ORIGIN; DILUTION;
                                                      CYBERSQUATTING; AND BREACH OF
14           v.                                       CONTRACT**

15  9 XIU NETWORK (SHENZHEN) TECHNOLOGY               **DEMAND FOR TRIAL BY JURY**
    CO., LTD. a/k/a JIUXIU NETWORK
16  (SHENZHEN) TECHNOLOGY CO., LTD.;
    9 XIU FEISHU SCIENCE AND TECHNOLOGY
17  COMPANY LTD.;
    9 XIUFEI BOOK TECHNOLOGY CO., LTD.;
18  HOME NETWORK (FUJIAN) TECHNOLOGY
    CO., LTD.;
19  WEI GAO a/k/a GAO WEI;
    ZHAOCHUN LIU a/k/a/ LIU ZHAOCHUN; and
20  ZHAOPING LIU a/k/a LIU ZHAOPING,

21                          Defendants.

22

23

24

25

26

27

28

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

COMPLAINT

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

Plaintiffs Facebook, Inc. and Instagram, LLC, allege the following:

## I.   INTRODUCTION

1.     From 2017 until the present, Defendants 9 Xiu Network Science and Technology (Shenzhen) Company Ltd. a/k/a Jiuxiu Network Science and Technology (Shenzhen) Company Ltd. ("9 Xiu Shenzhen"), 9 Xiu Feishu Science and Technology Company Ltd. ("9 Xiu Feishu"), 9 Xiufei Book Technology Co., Ltd. ("9 Xiufei"), Home Network (Fujian) Technology Co., Ltd. ("Home Network"), Wei Gao, a/k/a Gao Wei ("Gao"), Zhaochun Liu, a/k/a Liu Zhaochun ("Zhaochun") and Zhaoping Liu a/k/a Liu Zhaoping ("Zhaoping") (collectively, "Defendants"), operated a series of websites promoting the sale of fake accounts (*e.g.* using fake names or other false identifiers) and inauthentic accounts (*e.g.* used for inauthentic activity).  In doing so, Defendants violated Facebook's Terms of Service (TOS) and Instagram's Terms of Use (TOU). Defendants also marketed fake and inauthentic accounts for Google, Twitter, Apple, Amazon, LinkedIn, and other online service providers. In marketing fake and inauthentic Facebook and Instagram accounts, Defendants used Facebook and Instagram trademarks and service marks, and confusingly similar domain names, in violation of the Lanham Act (15 U.S.C. § 1051 *et seq.*) and the Anti-Cybersquatting Consumer Protection Act (15 U.S.C. § 1125). By this lawsuit, Facebook and Instagram seek to stop Defendants' ongoing unlawful and harmful conduct.

## II.   THE PARTIES

2.     Plaintiff Facebook, Inc. ("Facebook") is a Delaware corporation with its principal place of business in Menlo Park, California.

3.     Plaintiff Instagram, LLC. ("Instagram") is a Delaware limited liability company with its principal place of business in Menlo Park, California.

4.     Defendants 9 Xiu Shenzhen, 9 Xiu Feishu, 9 Xiufei, and Home Network are affiliated companies located in Longyan and Shenzhen in the People's Republic of China. According to their websites, these Defendants manufacture electronics and hardware, offer software and web development services, virtual private servers, online advertising services, and engage in the registration and sale of accounts, in bulk, for various social networking sites.

5.     Since June 2017, Defendant Gao has been the Chief Executive Officer and sole

shareholder of 9 Xiu Shenzhen.  *See* Exhibit 1 (original screenshot and translation).

6.     Prior to June 2017, Defendant Zhaochun was the Chief Executive Officer and sole shareholder of 9 Xiu Shenzhen. *See* Exhibit 1. Defendant Zhaochun continues to manage accounts used to receive payments on behalf of 9 Xiu Shenzhen..

7.     Beginning in May 2017, Defendant Zhaoping registered the domain names and managed the websites at issue in this Complaint.

8.     At all times material to this action, each of the Defendants was the agent, servant, employee, partner, alter ego, subsidiary, or coconspirator of and with each of the other Defendants, and the acts of each of the Defendants were in the scope of such relationship; in doing the acts and failing to act as alleged in this Complaint, each of the Defendants acted with the knowledge, permission, and the consent of each of the other Defendants; and, each of the Defendants aided and abetted the other Defendants in the acts or omissions alleged in this Complaint.

## III.    JURISDICTION AND VENUE

9.     This Court has subject matter over the claims in this Complaint, which arise under the trademark laws of the United States, pursuant to 15 U.S.C. § 1121, and which involve a federal question, pursuant to 28 U.S.C. § 1331.

10.     This Court also has jurisdiction over all the claims asserted in this Complaint pursuant to 28 U.S.C. § 1332 because complete diversity exists between Facebook and each of the named Defendants, and because the amount in controversy exceeds $75,000.

11.     This Court has supplemental jurisdiction over the claims in this Complaint that arise under California's statutory and common law pursuant to 28 U.S.C. § 1367(a) because the state law claims are substantially related to the federal claims and derive from a common nucleus of operative facts.

12.     The Court has personal jurisdiction over Defendants because they have created, controlled, and marketed Facebook accounts and in doing so agreed to Facebook's TOS and Instagram's TOU. Facebook's TOS and Instagram's TOU require Defendants submit to the personal jurisdiction of this Court for litigating any claim, cause of action, or dispute with Facebook or Instagram, respectively.

13.     The Court also has personal jurisdiction because Defendants transacted business and committed tortious acts within and directed to this District, and Facebook and Instagram's claims arise

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Houston ◆ Los Angeles ◆ San Francisco ◆ St. Louis

from those activities. Defendants knowingly directed and targeted parts of their unlawful scheme at Facebook and Instagram, which have their principal place of business in California. Defendants also targeted Instagram, Google, Twitter, Apple, and others which also have principal places of business in this District.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b) as the threatened and actual harm to the Plaintiffs occurred in this district. Venue is also proper with respect to each of the Defendants pursuant to 28 U.S.C. §1391(c)(3) because none of them reside in the United States.

## IV.     INTRADISTRICT ASSIGNMENT

15.     Because this action involves intellectual property rights, it is exempt from the Court's division-specific venue rule pursuant to Civil L.R. 3-2(c).

## V.     FACTUAL ALLEGATIONS

### A.     Background on Facebook and Instagram

16.     Facebook is a social networking website and mobile application that enables its users to create their own personal profiles and connect with each other on their personal computers and mobile devices. As of September 2018, Facebook had more than 1.49 billion daily active accounts and over 2.2 billion monthly active users from all over the world.

17.     Everyone who uses Facebook must electronically agree to Facebook's TOS (available at https://www.facebook.com/terms.php) and other rules that govern access to, and use of, Facebook. Facebook's     TOS     include     Facebook's     Community     Standards     (available     at https://www.facebook.com/communitystandards/).

18.     Facebook's TOS prohibit fake and inauthentic accounts. Section 3.1 of Facebook's TOS requires Facebook users provide accurate information about their identity and prohibits deceptive, misleading, and unlawful conduct. Section 3.1 specifically requires Facebook users to: (a) "Use the same name that [they] use in everyday life;" (b) "Provide accurate information about [themselves];" and (c) "Create only one account (your own)[.]"

19.     Facebook's Community Standards also prohibit Facebook users from misrepresenting their identities or misusing their profiles by, for example, "[m]aintaining multiple accounts" or "[c]reating inauthentic profiles." Facebook users may not "[i]mpersonate others" by "[c]reating a profile

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

assuming the persona of or speaking for another person or entity," or "[e]ngage in inauthentic behavior" such as creating fake accounts, setting up profiles with fake names, or participating in "coordinated inauthentic behavior," defined to include deliberately misleading people "about the origin of content" or "about the destination of links off our services."

20.     Instagram is a photo and video sharing and editing service, mobile application, and social network. Instagram users can choose to share their photos and videos with their followers or with select groups of friends. They can also view, comment, and like posts shared on Instagram. As of June 2018, Instagram had over 1 billion active accounts.

21.     Everyone who uses Instagram must electronically agree to Instagram's TOU and other rules that govern access to and use of Instagram, including Instagram's Community Guidelines (available at https://help.instagram.com/581066165581870). Instagram's TOU prohibit users from: (a) "[I]mpersonat[ing] others or provid[ing] inaccurate information . . . including registration information;" (b) Engaging in "unlawful, misleading, or fraudulent" actions; (c) "[I]nterfering or impairing the intended operation of the Service;" and (d) "Attempt[ing] to buy, sell, or transfer any aspect of [an Instagram] account."

22.     In addition, Instagram's Community Guidelines prohibit users from artificially collecting positive account attributes (*i.e.* likes, followers, and shares).

**B.     Facebook and Instagram's Enforcement Against Fake and Inauthentic Accounts**

23.     Fake and inauthentic accounts can be used for spam and phishing campaigns, misinformation campaigns, marketing scams, advertising fraud, and other fraud schemes which are profitable at scale. These schemes frequently target the users of various social networking sites and online services providers, in addition to Facebook and Instagram. As a result, illicit online marketplaces advertise and sell bulk quantities of fake and inauthentic social media accounts.

24.     Fake and inauthentic Facebook and Instagram accounts can be created manually or through an automated process utilizing computer scripts and bots. Illicit enterprises that create and control fake and inauthentic accounts in order to artificially inflate engagement and likes are sometimes referred to as "click farms."

25.     To combat fraud schemes on their platforms, Facebook and Instagram proactively use a

combination of technical and manual means to detect and disable fake and inauthentic accounts. For example, between January and September 2018, Facebook and Instagram disabled over 2.1 billion inauthentic accounts, often within minutes of the accounts' creation.

26.     Facebook and Instagram use different processes and systems for detecting fake accounts at different stages in their lifecycle, including:

a.      <u>Pre-registration</u>. Facebook blocks the registration of an account when the process of creating the account appears suspicious or automated.

b.      <u>Registration</u>. Facebook requires that users register for an account before they can use Facebook and provide a valid first and last name, date of birth, gender, and a phone number or email. Facebook and Instagram also apply machine-learning models to detect inauthentic accounts at this stage and disable any identified accounts.

c.      <u>Confirmation</u>. After registering, Facebook requires users to confirm their accounts by responding to an email or text message sent to the contact information provided during registration.

d.      <u>Post-registration</u>. Facebook and Instagram apply machine-learning models to detect inauthentic accounts after registration. If an account is flagged as possibly inauthentic, Facebook may ask the user to enter a phone number, confirm a code sent to the registration email, or ask the user to respond to various technical tests or "checks," including ReCaptcha, to confirm that he or she is a human. Similarly, Instagram also uses machine learning and other tools to help identify accounts engaged in inauthentic activity (*i.e.*, likes, follows, and comments).

e.      <u>Reporting</u>. Facebook use and Instagram various technical means to investigate accounts reported as inauthentic. If these are not conclusive, the accounts are reviewed manually.

**C.      Facebook and Instagram's Trademarks and Service Marks**

27.     Facebook owns the exclusive rights to several trademarks and service marks including: (a) the distinctive FACEBOOK trademark and service mark, having used the mark in connection with its goods and services since 2004; (b) the distinctive FACEBOOK (and its design) trademark and service mark, having used the mark in connection with its goods and services since 2005; and (c) the distinctive

COMPLAINT

"f" (and its design) trademark and service mark, having used the mark in connection with its goods and services since 2006 (collectively referred to in this Complaint as the "Facebook Trademarks").   The Facebook Trademarks at issue in this Complaint are shown in Figures 1 and 2 below:





Figure 1: FACEBOOK (design)

Figure 2: Facebook "F" (design)

28.    Facebook's use of the Facebook Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. Facebook has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Facebook and the Facebook Trademarks.  As a result of Facebook's efforts and use, the Facebook Trademarks are inextricably linked with the products and services offered by Facebook.   Facebook Trademarks are now famous, and they are recognized around the world as signifying high-quality, authentic goods and services provided by Facebook.

29.    In addition to its extensive common law rights in the Facebook Trademarks, Facebook own numerous United States registrations for the Facebook Trademarks. Relevant to this case are the following registrations:

    a.   United States Registration Number 3,122,052;

    b.   United States Registration Number 3,881,770;

    c.   United States Registration Number 3,934,743;

    d.   United States Registration Number 4,102,823; and

    e.   United States Registration Number 4,102,824.

Copies of the registration certificates are attached to this Complaint as Exhibit 2.

COMPLAINT

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

30.     Instagram owns the exclusive rights to several trademark and service marks including the distinctive INSTAGRAM trademark, having used the mark in connection with its goods and services as early as 2010.  Instagram also owns the exclusive rights to the Instagram Camera Logo and the stylized forms of the INSTAGRAM trademark (all trademarks collectively referred to in this Complaint as the "Instagram Trademarks").  The Instagram Trademarks at issue in this Complaint are shown below in Figures 3 and 4:

*Instagram*     

Figure 3: INSTAGRAM wordmark (stylized form)          Figure 4: Instagram Camera Logo (multicolor)

31.     Instagram's use of the Instagram Trademarks in interstate commerce has been extensive, continuous, and substantially exclusive. Instagram has made, and continues to make, a substantial investment of time, effort, and expense in the promotion of Instagram and the Instagram Trademarks.  As a result of Instagram's efforts and use, the Instagram Trademarks are inextricably linked with the products and services offered by Instagram.  Instagram Trademarks are now famous, and they are recognized around the world as signifying high-quality, authentic goods and services provided by Instagram.

32.     In addition to its extensive common law rights in the Instagram Trademarks, Instagram own numerous United States registrations for the Instagram Trademarks. Relevant to this case are the following registrations:

    a.   United States Registration Number 4,795,634;

    b.   United States Registration Number 4,146,057;

    c.   United States Registration Number 4,756,754;

    d.   United States Registration Number 5,566,030;

    e.   United States Registration Number 4,170,675;

    f.   United States Registration Number 4,856,047;

    g.   United States Registration Number 4,822,600;

    h.   United States Registration Number 4,827,509;

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

8

i.   United States Registration Number 4,863,595;

j.   United States Registration Number 5,019,151;

k.   United States Registration Number 5,181,545;

l.   United States Registration Number 5,198,379;

m.   United States Registration Number 5,299,116;

n.   United States Registration Number 5,299,118;

o.   United States Registration Number 5,299,119; and

p.   United States Registration Number 5,299,120.

Copies of the registration certificates are attached to this Complaint as Exhibit 3.

**D.   Defendants' Websites Violate Facebook's TOS and Instagram's TOU and the Lanham Act**

33.   Since 2017, Defendants promoted the sale of fake and inauthentic Facebook and Instagram accounts using the following websites:

a.   9xiufacebook.com (Exhibit 4);

b.   9xiufacebook.cc (Exhibit 5);

c.   9xiufacebook.net (Exhibit 6);

d.   maihaoba.cc (Exhibit 7);

e.   myfacebook.cc (Exhibit 8); and

f.   myhaoba.com (Exhibit 9).

34.   On these sites, Defendants advertised that they created, controlled, and maintained fake and inauthentic Facebook and Instagram accounts and marketed these for sale, as shown in Exhibits 4-9. This violated Facebook's TOS and Instagram's TOU.

35.   The sites also marketed and sold fake and inauthentic Twitter, Google Voice, Gmail, YouTube, LinkedIn, Apple, Amazon, Pinterest, Snapchat, and others. Defendants sold the accounts in packages, or "bundles," which included bulk quantities of accounts belonging to Facebook, Instagram, and others. The price of the accounts varied by the age of accounts and other attributes, including the number of followers or geographical location associated with the accounts. Screenshots of bundles the fake and inauthentic accounts sold on 9xiufacebook.com. S*ee* Exhibit 10.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

36.     In addition to selling fake and inauthentic accounts, Defendants advertised marketing tools and services designed to increase likes, comments, friends, and other activity on Facebook, Instagram, Amazon, Google, LinkedIn, and other sites. Defendants also advertised other tools designed for unauthorized marketing and spam.

37.     Defendants accepted payments for their illicit services through accounts established with Alipay, PayPal, and the Bank of China. A screenshot from one of Defendants' websites, 9xiufacebook.com, showing these payment methods is attached to this Complaint as Exhibit 11. As shown in Exhibit 11, at least two the account were controlled by Defendant Zhaochun.

38.     In response to Facebook's past enforcement actions against fake and inauthentic accounts, as set forth above in paragraphs 23-26, Defendants falsely advertised the availability of fake accounts that could not be detected, disabled, or suspended by Facebook. The Defendants charged a premium for these types of accounts.  To promote these accounts, Defendants falsely represented that they were "Facebook China Regional Strategic Partner." *See* Exhibit 9.

**E.     Defendants Also Registered and Used Infringing Domain Names**

39.     Between 2017 and 2019, Defendants registered and used domain names that are identical or confusingly similar to the Facebook Trademarks, including:

a.   9xiufacebook.com;

b.   9xiufacebook.cc;

c.   9xiufacebook.net;

d.   infacebook.cc;

e.   myfacebook.cc; and

g.   facebook88.net.

Publicly available registration information for each domain name is attached as Exhibit 12.

40.     According to the domain name registration information in Exhibit 12, Zhaoping registered the above-listed domain names, with the exception of 9xiufacebook.com and myfacebook.cc. On information and belief, Defendants have intentionally provided misleading ownership information to mask the fact that the domain names 9xiufacebook.com and myfacebook.cc were also registered and controlled by Defendants.

Tucker Ellis LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**FIRST CAUSE OF ACTION**

**[Trademark and Service Mark Infringement of
Facebook Trademarks Under 15 U.S.C. § 1114]**

41.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

42.     Defendants have used the Facebook Trademarks in interstate commerce. Defendants' use of the Facebook Trademarks is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' unauthorized use of the Facebook Trademarks on the websites controlled by Defendants.

43.     The above-described acts of Defendants constitute trademark and service mark infringement in violation of 15 U.S.C. § 1114(1) and entitle Facebook to relief.

44.     Defendants have unfairly profited from the alleged trademark and service mark infringement.

45.     By reason of Defendants' acts of trademark and service mark infringement, Facebook has suffered damage to the goodwill associated with the Facebook Trademarks.

46.     Defendants have irreparably harmed Facebook and, if not enjoined, will continue to irreparably harm Facebook and its federally registered trademarks and service marks.

47.     Defendants have irreparably harmed the general public and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

48.     Facebook's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Facebook is entitled to the entry of a temporary restraining order against Defendants and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

49.     Facebook is entitled to damages, and Facebook is further entitled to have those damages trebled under 15 U.S.C. § 1117.

50.     This is an exceptional case making Facebook eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

COMPLAINT

**SECOND CAUSE OF ACTION**

**[Trademark and Service Mark Infringement of
Instagram Trademarks Under 15 U.S.C. § 1114]**

51.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

52.     Defendants have used the Instagram Trademarks in interstate commerce. Defendants' use of the Instagram Trademarks is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendants' unauthorized use of the Instagram Trademarks on the websites controlled by Defendants.

53.     The above-described acts of Defendants constitute trademark and service mark infringement in violation of 15 U.S.C. § 1114(1), entitled Instagram to relief.

54.     Defendants have unfairly profited from the alleged trademark and service mark infringement.

55.     By reason of Defendants' acts of trademark and service mark infringement, Instagram has suffered damage to the goodwill associated with the Instagram Trademarks.

56.     Defendants have irreparably harmed Instagram and, if not enjoined, will continue to irreparably harm Instagram and its federally registered trademarks and service marks.

57.     Defendants have irreparably harmed the general public and, if not enjoined, will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

58.     Instagram's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Instagram is entitled to the entry of a temporary restraining order against Defendants and preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

59.     Instagram is entitled to damages, and Instagram is further entitled to have those damages trebled under 15 U.S.C. § 1117.

60.     This is an exceptional case making Instagram eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

**THIRD CAUSE OF ACTION**

**[Trademark Infringement of Facebook Trademarks
and False Designation of Origin Under 15 U.S.C. § 1125(a)]**

61. Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

62. The Facebook Trademarks are distinctive marks that are associated with Facebook and exclusively identify its business, products, and services.

63. Defendants' use in commerce of the Facebook Trademarks, and variations thereof, is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendants' goods and services are authorized, sponsored, or approved by, or are affiliated with, Facebook.

64. Defendants' acts constitute trademark and service mark infringement of the Facebook Trademarks, as well as false designation of origin, in violation of 15 U.S.C. § 1125(a), entitling Facebook to relief.

65. Defendants have unfairly profited from their conduct.

66. By reason of the above-described acts of Defendants, Facebook has suffered damage to the goodwill associated with the Facebook Trademarks.

67. Defendants have irreparably harmed Facebook, and if they are not enjoined, they will continue to irreparably harm Facebook and the Facebook Trademarks.

68. Defendants have irreparably harmed the general public, and if the Defendants are not enjoined, they will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

69. Facebook's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Facebook is entitled to the entry of a temporary restraining order against Defendants as well as preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1117.

70. This is an exceptional case making Facebook eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

COMPLAINT

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

## FOURTH CAUSE OF ACTION

### [Trademark Infringement of the Instagram Trademarks and False Designation of Origin Under 15 U.S.C. § 1125(a)]

71.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

72.     The Instagram Trademarks are distinctive marks that are associated with Instagram and exclusively identify its business, products, and services.

73.     Defendants' use in commerce of the Instagram Trademarks, and variations thereof, is likely to cause confusion, or to cause mistake, or to deceive the relevant public that Defendants' goods and services are authorized, sponsored, or approved by, or are affiliated with, Instagram.

74.     Defendants' acts constitute trademark and service mark infringement of the Instagram Trademarks, as well as false designation of origin, in violation of 15 U.S.C. § 1125(a), entitling Instagram to relief.

75.     Defendants have unfairly profited from their conduct.

76.     Instagram has suffered damage to the goodwill associated with the Instagram Trademarks.

77.     Defendants have irreparably harmed Instagram and, if they are not enjoined, they will continue to irreparably harm Instagram and the Instagram Trademarks.

78.     Defendants have irreparably harmed the general public, and if Defendants are not enjoined, they will continue to irreparably harm the general public, which has an interest in being free from confusion, mistake, and deception.

79.     Instagram's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants. Accordingly, Instagram is entitled to the entry of a temporary restraining order against Defendants as well as preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1117.

80.     This is an exceptional case making Instagram eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

## FIFTH CAUSE OF ACTION

### [Dilution of the Facebook Trademarks Under 15 U.S.C. § 1125(c)]

81.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

82.     The Facebook Trademarks are famous, as that term is used in 15 U.S.C. § 1125(c), and they were famous before Defendants' use of the Facebook Trademarks and variations of the trademarks in commerce. This fame is based on, among other things, the inherent distinctiveness and federal registration of each of the Facebook Trademarks as well as the extensive and exclusive worldwide use, advertising, promotion, and recognition of the Facebook Trademarks.

83.     Defendants' use of the Facebook Trademarks, and variations thereof, in commerce is likely to cause dilution by blurring or dilution by tarnishment of the Facebook Trademarks.

84.     Defendants' acts constitute dilution by blurring and dilution by tarnishment in violation of 15 U.S.C. § 1125(c), entitling Facebook to relief.

85.     Defendants have unfairly profited from their conduct.

86.     Defendants damaged the goodwill associated with the Facebook Trademarks and they will continue to cause irreparable harm.

87.     Facebook's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants.

88.     Accordingly, Facebook is entitled to the entry of a temporary restraining order against Defendants as well as preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

89.     Because Defendants' acted willfully, Facebook is entitled to damages, and those damages should be trebled pursuant to 15 U.S.C. § 1117.

90.     This is an exceptional case making Facebook eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

## SIXTH CAUSE OF ACTION

### [Dilution of the Instagram Trademarks Under 15 U.S.C. § 1125(c)]

91.     Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

92.     The Instagram Trademarks are famous, as that term is used in 15 U.S.C. § 1125(c), and they were famous before Defendants' use of the Instagram Trademarks and variations thereof in commerce. This fame is based on, among other things, the inherent distinctiveness and federal registration of each of the Instagram Trademarks as well as the extensive and exclusive nationwide use, advertising, promotion, and recognition of the Instagram Trademarks.

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Houston ◆ Los Angeles ◆ San Francisco ◆ St. Louis

COMPLAINT

93.     Defendants' use of the Instagram Trademarks, and variations thereof, in commerce is likely to cause dilution by blurring or dilution by tarnishment of the Instagram Trademarks.

94.     Defendants' conduct constitutes dilution by blurring and dilution by tarnishment in violation of 15 U.S.C. § 1125(c), entitling Instagram to relief.

95.     Defendants have unfairly profited from their conduct.

96.     Instagram has suffered damage to the goodwill associated with the Instagram Trademarks and has suffered, and will continue to suffer, irreparable harm.

97.     Instagram's remedy at law is not adequate to compensate it for the injuries inflicted by Defendants.

98.     Accordingly, Instagram is entitled to the entry of a temporary restraining order against Defendants as well as preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

99.     By reason of Defendants' willful acts, Instagram is entitled to damages, and those damages should be trebled pursuant to 15 U.S.C. § 1117.

100.     This is an exceptional case making Instagram eligible for an award of attorneys' fees pursuant to 15 U.S.C. § 1117.

## SEVENTH CAUSE OF ACTION

### [Cybersquatting on the Facebook Trademarks Under 15 U.S.C. § 1125(d)]

101.     Facebook realleges and incorporates by reference all of the preceding paragraphs.

102.     Defendants registered, trafficked in, or used the domain names 9xiufacebook.com, 9xiufacebook.cc, 9xiufacebook.net, infacebook.cc, myfacebook.cc, and facebook88.net (collectively, the "Infringing Domain Names").

103.     The Facebook Trademarks were distinctive and federally registered at the United States Patent and Trademark Office at the time Defendants registered and used the Infringing Domain Names.

104.     The Facebook Trademarks are and were famous within the meaning of 15 U.S.C. § 1125(c) at the time of the registration of each of the Infringing Domain Names.

105.     The Infringing Domain Names are confusingly similar to the Facebook Trademarks.

106.     The Infringing Domain Names are dilutive of the Facebook Trademarks.

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

107.    Defendants registered, trafficked in, or used the Infringing Domain Names with a bad faith intent to profit from the Facebook Trademarks.

108.    The Infringing Domain Names do not consist of the legal name of any of the Defendants, nor do they consist of a name that is otherwise commonly used to identify any of the Defendants.

109.    Defendants have not made any prior use of any of the Infringing Domain Names in connection with the *bona fide* offering of any goods or services.

110.    Defendants have not made any *bona fide* fair use of the Facebook Trademarks on a website accessible at any of the Infringing Domain Names.

111.    Defendants registered and used the Infringing Domain Names to divert consumers from Facebook's legitimate website (www.facebook.com) to a website accessible under the Infringing Domain Names for Defendants' commercial gain by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of their websites.

112.    Defendants' registration, use, and/or trafficking in the Infringing Domain Names constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Facebook to relief.

113.    Facebook's remedy at law is not adequate to compensate it for the injuries Defendants inflicted on Facebook. Accordingly, Facebook is entitled to preliminary and permanent injunctive relief pursuant to 15 U.S.C. § 1116.

114.    Facebook is entitled to recover its costs as well as Defendants' profits, Facebook's actual damages, or statutory damages under 15 U.S.C. § 1117, on election by Facebook, in an amount of $100,000 per domain name.

115.    This is an exceptional case making Facebook eligible for an award of attorneys' fees under 15 U.S.C. § 1117.

**EIGHTH CAUSE OF ACTION**

**[Breach of Contract: Facebook's TOS]**

116.    Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

117.    Access to and use of Facebook's services is governed by Facebook's TOS and its related policies.

118.    Defendants agreed to and became bound by Facebook's TOS and related policies through

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

their use of Facebook and its services.

119.    Facebook has performed all conditions, covenants, and promises required of it in accordance with Facebook's TOS and related policies.

120.    Defendants knowingly, willfully, and systematically breached and continue to breach Facebook's TOS and related policies as alleged herein.

121.    Defendants' past and ongoing breaches have directly and proximately caused, and continue to directly and proximately cause, irreparable harm and injury to Facebook.

122.    When Defendants agreed to and became bound by Facebook's TOS and related policies, both Facebook and Defendants knew or reasonably could have foreseen that the harm and injury to Facebook was likely to occur in the ordinary course of events as a result of Defendants' breach.

## NINTH CAUSE OF ACTION

### [Breach of Contract: Instagram's TOU]

123.    Plaintiffs reallege and incorporate by reference all of the preceding paragraphs.

124.    Access to and use of Instagram's services is governed by Instagram's TOU and its related policies.

125.    Defendants agreed to and became bound by Instagram's TOU and related policies through their use of Instagram and its services.

126.    Instagram has performed all conditions, covenants, and promises required of it in accordance with Instagram's TOU and related policies.

127.    Defendants knowingly, willfully, and systematically breached and continues to breach Instagram's TOU and related policies as alleged herein.

128.    Defendants' past and ongoing breaches have directly and proximately caused, and continue to directly and proximately cause, irreparable harm and injury to Instagram.

129.    When Defendants agreed to and became bound by Instagram's TOU and related policies, both Instagram and Defendants knew or reasonably could have foreseen that the harm and injury to Instagram was likely to occur in the ordinary course of events as a result of Defendants' breach.

TUCKER ELLIS LLP

Chicago ◆ Cleveland ◆ Columbus ◆ Houston ◆ Los Angeles ◆ San Francisco ◆ St. Louis

**REQUEST FOR RELIEF**

Plaintiffs request judgment against Defendants as follows:

1.      That the Court enter a judgment against Defendants that Defendants have:

    a.   Infringed the rights of Facebook in the federally registered Facebook Trademarks in violation of 15 U.S.C. § 1114(1);

    b.   Infringed the rights of Facebook in the Facebook Trademarks in violation of 15 U.S.C. § 1125(a);

    c.   Diluted the Facebook Trademarks in violation of 15 U.S.C. § 1125(c);

    d.   Infringed the rights of Facebook in the Facebook Trademarks in violation of 15 U.S.C. § 1125(d);

    e.   Breached its contracts with Facebook in violation of California statutory and common law.

    f.   Infringed the rights of Instagram in the federally registered Instagram Trademarks in violation of 15 U.S.C. § 1114(1);

    g.   Infringed the rights of Instagram in the Instagram Trademarks in violation of 15 U.S.C. § 1125(a);

    h.   Diluted the Instagram Trademarks in violation of 15 U.S.C. § 1125(c);

    i.   Breached its contracts with Instagram in violation of California statutory and common law.

2.      That each of the above acts was willful.

3.      That the Court issue a permanent injunction enjoining and restraining Defendants and their agents, servants, employees, successors and assigns, and all other persons acting in concert with or in conspiracy with or affiliated with Defendants, from:

    a.   Engaging in any infringing activity including advertising, franchising, selling, and offering for sale any goods or services in connection with the Facebook Trademarks or any similar mark;

    b.   Engaging in any activity that lessens the distinctiveness or tarnishes the Facebook Trademarks;

COMPLAINT

c.  Registering, using or trafficking in any domain name that is identical or confusingly similar to any of the Facebook Trademarks; and

d.  Creating or maintaining any Facebook accounts or otherwise accessing Facebook in violation of Facebook's TOS.

e.  Engaging in any infringing activity including advertising, franchising, selling, and offering for sale any goods or services in connection with the Instagram Trademarks or any similar mark;

f.  Engaging in any activity that lessens the distinctiveness or tarnishes the Instagram Trademarks;

g.  Registering, using or trafficking in any domain name that is identical or confusingly similar to any of the Instagram Trademarks; and

h.  Creating or maintaining any Instagram accounts or otherwise accessing Instagram in violation of Instagram's TOU.

4.  That Facebook and Instagram be awarded damages for Defendant's trademark and service mark infringement and that these damages be trebled due to Defendants' willfulness, in accordance with the provisions of 15 U.S.C. § 1117.

5.  That Facebook and Instagram be awarded all profits resulting from Defendants' infringement of Facebook's rights and Instagram's rights and by means of Defendants' illegal acts.

6.  That Defendants be ordered to account for and disgorge to Facebook and to Instagram all amounts by which Defendants have been unjustly enriched by reason of the unlawful acts complained of herein.

7.  That Facebook be awarded $100,000 in statutory damages per infringing domain name by reason of Defendants' cybersquatting in accordance with the provisions of 15 U.S.C. § 1117.

8.  That Facebook and Instagram be awarded an amount sufficient to reimburse them for the costs of corrective advertising.

9.  That Facebook and Instagram be awarded damages sufficient to compensate them for Defendants breaches of Facebook's TOS and related policies and Instagram's TOU and related policies.

10. That Facebook and Instagram be awarded prejudgment interest on all damages for which

COMPLAINT

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

1    it is entitled to such interest.

2          11.    That Facebook and Instagram be awarded its reasonable attorneys' fees pursuant to

3    15 U.S.C. § 1117, California law, and any other applicable provision of law.

4          12.    That Facebook and Instagram be awarded its costs of suit.

5          13.    That the Court grant all such other and further relief as the Court may deem just and proper.

6

7    DATED: March 1, 2019                          Tucker Ellis LLP

8

9

10                                        By: /s/David J. Steele
                                              David J. Steele
11                                            Howard A. Kroll
                                              Steven E. Lauridsen
12
                                              Attorneys for Plaintiffs,
13                                            Facebook, Inc. and
                                              Instagram, LLC
14
                                                  Jessica Romero
15                                                Michael Chmelar
                                                  Stacey Chen
16                                                Platform Enforcement and Litigation
                                                  Facebook, Inc.
17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

TUCKER ELLIS LLP

Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis

**DEMAND FOR TRIAL BY JURY**

Plaintiff Facebook, Inc. hereby demands a trial by jury to decide all issues so triable in this case.

DATED: March 1, 2019                    Tucker Ellis LLP


By: /s/David J. Steele
    David J. Steele
    Howard A. Kroll
    Steven E. Lauridsen

    Attorneys for Plaintiffs,
    Facebook, Inc. and
    Instagram, LLC

COMPLAINT

TUCKER ELLIS LLP
Chicago ♦ Cleveland ♦ Columbus ♦ Houston ♦ Los Angeles ♦ San Francisco ♦ St. Louis